**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **DARREN HENDERSON, # R-40280,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | Case No. 12-1113-GPM |
| ) | |
| **WARDEN REDNOUR,** ) | |
| **LT. MICHAEL MIFFLIN,** ) | |
| **TRACY GROUER-HARRINGTON,[1]** ) | |
| **SHERRY BENTON, SGT. HEINNE,** ) | |
| **SGT. WITTHOFF,** ) | |
| **LT. CARTHWRIGHT,** ) | |
| **MAJOR DURHAM, and** ) | |
| **SGT. HASEMEYER,** ) | |
| ) | |
| **Defendants.** ) | |

# MEMORANDUM AND ORDER

**MURPHY, District Judge:**

Plaintiff, currently incarcerated at Menard Correctional Center ("Menard"), brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. He is currently serving a 47-year sentence for murder. Plaintiff claims that he was wrongly held in segregation for three months longer than he should have served, after a disciplinary ticket was expunged. Further, he claims he was subjected to inhumane conditions in the segregation cell where he spent part of his confinement, and his grievances over these matters were mishandled.

More specifically, Plaintiff explains that he received an Inmate Disciplinary Report ("IDR") on May 26, 2011, for "205: security threat group or unauthorized organizational activity" (Doc. 1, pp. 2, 20). Defendant Mifflin (chair of the adjustment committee) found him

---

[1] Plaintiff's exhibits show that the correct spelling of this Defendant's surname is "Gruber-Harrington." She shall be referred to herein as Defendant Harrington.

guilty and punished him with six months of segregation.

Plaintiff filed a grievance over this disciplinary action.  He complains that Defendant Harrington (grievance officer) improperly denied his grievance as untimely, despite Plaintiff's diligent efforts to submit his paperwork within applicable time limits (Doc. 1, pp. 8, 29-35).  Plaintiff filed another grievance on August 5, 2011, complaining about Defendant Harrington's mishandling of his grievance (Doc. 1, pp. 36-37).

On August 27, 2011, Plaintiff's segregation cell was searched, and he was issued a second IDR for "203: drug or drug paraphernalia, [and] 308: contraband/unauthorized property" after the search turned up a bag of liquid containing alcohol, along with various food items and a mirror (Doc. 1, pp. 3-4, 9, 38).  Plaintiff admitted guilt, and Defendant Mifflin punished him for these offenses with another six months of segregation, to be served consecutive to the first six month term (Doc. 1, p. 9, 38).  He was due to be released from segregation on May 26, 2012.

Upon being issued the August 27 IDR, Plaintiff was put into an "observation cell" in the Menard C-Wing, where he was held until October 12, 2011 (Doc. 1, pp. 9-10).  He had also been held in this cell immediately after the May 2011 IDR (from May 26 through June 1, 2011).  The observation cell had no electricity, no light switch and was illuminated 24 hours per day, no plumbing, no bedroll, and smelled of urine and feces (Doc. 1, pp. 7, 16-17).  Plaintiff asserts he was placed in this cell "for no reason other than retaliation" and Defendants Heinne, Wittoff, Carthwright, and Durham (correctional officers) refused to move him to a regular segregation cell (Doc. 1, p. 10).  He spent approximately 55 days of his segregation in this observation cell (Doc. 1, p. 5).

Apparently as a result of Plaintiff's grievances filed in June and August, 2011, the May 2011 IDR and six months of segregation time was ultimately expunged.  Plaintiff was informed

of this impending action on September 16, 2011. He filed a grievance over the calculation of his segregation time on September 26, 2011 (Doc. 1, pp. 41-44). Final approval of the expungement and cancellation of the original six-month term in segregation was given on October 12, 2011, and on that date, Plaintiff was released from the C-Wing observation cell and returned to the regular segregation population (Doc. 1, pp. 4, 10, 45-46). His remaining six month term of segregation, which began with the August 2011 IDR, was re-set so that his segregation release date became February 27, 2012 (Doc. 1, p. 11). However, because Plaintiff had been placed in segregation in May 2011 after the first ticket, the result was that he spent a total of nine months in segregation despite the expungement.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. After fully considering the allegations in Plaintiff's pleading, the Court concludes that the complaint fails to state a claim upon which relief may be granted, for the reasons to follow. However, Plaintiff shall be allowed to submit an amended complaint to present any allegations which may support a retaliation claim.

## Discussion

Because Plaintiff's "conviction" for the May 2011 prison disciplinary infraction was expunged, the doctrine of *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), does not present a bar to seeking damages in a civil rights action. *See Moore v. Mahone*, 652 F.3d 722, 723 (7th Cir. 2011) (the ruling in a prison disciplinary proceeding is a conviction for the purposes of *Heck* analysis). And if Plaintiff had been improperly held in prison past the date he should have been released on parole, he might have a due process liberty claim for damages. However, Plaintiff's claim is that he spent excessive time in segregation (a total of nine months), when his actual segregation term, after one charge was expunged, should have been only six months. In

Plaintiff's case, this does not give rise to a constitutional claim.

Under certain limited circumstances, an inmate punished with segregation may be able to pursue a claim for deprivation of a liberty interest without due process of law. *See Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009). However, those circumstances are not present in the instant case. First, Plaintiff does not point to any denial of procedural due process in the conduct of his disciplinary hearing over the May 2011 IDR. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974) (to satisfy due process concerns, inmate must be given advance written notice of the charge, the right to appear before the hearing panel, the right to call witnesses if prison safety allows, and a written statement of the reasons for the discipline imposed); *Black v. Lane*, 22 F.3d 1395, 1402 (7th Cir. 1994) (disciplinary decision must be supported by "some evidence"). In fact, prison officials' decision in October 2011 to expunge the May 2011 disciplinary infraction and the six months of segregation, indicates that Plaintiff received the due process he demanded, albeit not as swiftly as he would have preferred.

Even if there had been a procedural flaw in the handling of the May 2011 disciplinary charges, Plaintiff could not claim he was deprived of a protected liberty interest. An inmate has a due process liberty interest in being in the general prison population only if the conditions of his or her disciplinary confinement impose "atypical and significant hardship[s] . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir. 1997) (in light of *Sandin*, "the right to litigate disciplinary confinements has become vanishingly small"). For prisoners whose punishment includes being put in disciplinary segregation, under *Sandin*, "the key comparison is between disciplinary segregation and nondisciplinary segregation rather than between disciplinary segregation and the general prison population." *Wagner v. Hanks*, 128 F.3d 1173, 1175 (7th Cir.

1997).

The Seventh Circuit has recently elaborated two elements for determining whether disciplinary segregation conditions impose atypical and significant hardships: "the combined import of the duration of the segregative confinement *and* the conditions endured by the prisoner during that period." *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697-98 (7th Cir. 2009) (emphasis in original). The first prong of this two-part analysis focuses solely on the duration of disciplinary segregation. For relatively short periods of disciplinary segregation, inquiry into specific conditions of confinement is unnecessary. *See Lekas v. Briley*, 405 F.3d 602, 612 (7th Cir. 2005) (56 days); *Thomas v. Ramos*, 130 F.3d 754, 761 (7th Cir. 1997) (70 days) ("a relatively short period when one considers his 12 year prison sentence"). In these cases, the short duration of the disciplinary segregation forecloses any due process liberty interest regardless of the conditions. *See Marion*, 559 F.3d at 698 ("we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement").

In Plaintiff's case, he was confined in segregation only three months longer than he should have been. Three months may be long enough to trigger an inquiry into the conditions of that confinement, if the segregation had been imposed after a procedurally flawed hearing; however, in the context of Plaintiff's total sentence of 47 years, this is doubtful. *See Marion*, 559 F.3d at 697-98. More to the point, Plaintiff raises no complaints regarding the conditions in his "regular" segregation cell, where he was confined from June 1, 2011, until he was charged with the second disciplinary ticket on August 27, 2011. He argues only that the 55 days[2] he spent in the C-Wing observation cell subjected him to onerous and uncomfortable conditions. Whether the time Plaintiff spent in this observation cell totaled 55 or 68 days, or something in

---

[2] It is not clear how Plaintiff arrived at his calculation of 55 days in the observation cell. He states he was placed there after the May 2011 IDR, from May 27 to June 1, 2011, which totals seven days. He was put into that cell again on August 27 until October 12, 2011, which amounts to 61 days.

between, it was substantially shorter than the period of segregation that could prompt due process concerns under *Marion*.

However, because Plaintiff's complaint could also be read as attempting to raise an Eighth Amendment claim for his conditions of confinement in the observation cell, a discussion of those conditions may be warranted.

Not all prison conditions trigger Eighth Amendment scrutiny – only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman,* 452 U.S. 337, 346 (1981); *see also James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). In order to prevail on a conditions of confinement claim, a plaintiff must allege facts that, if true, would satisfy the objective and subjective components applicable to all Eighth Amendment claims. *McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994); *see also Wilson v. Seiter,* 501 U.S. 294, 302 (1991). The objective component focuses on the nature of the acts or practices alleged to constitute cruel and unusual punishment. *Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992). The objective analysis examines whether the conditions of confinement exceeded contemporary bounds of decency of a mature civilized society. *Id*. The condition must result in unquestioned and serious deprivations of basic human needs, or deprive inmates of the minimal civilized measure of life's necessities. *Rhodes v. Chapman,* 452 U.S. 337, 347 (1981); *accord Jamison-Bey v. Thieret*, 867 F.2d 1046, 1048 (7th Cir. 1989); *Meriwether v. Faulkner*, 821 F.2d 408, 416 (7th Cir. 1987).

In addition to showing objectively serious conditions, a plaintiff must also demonstrate the subjective component of an Eighth Amendment claim, in other words, the intent with which the acts or practices constituting the alleged punishment are inflicted. *Jackson*, 955 F.2d at 22. This requires that a prison official had a sufficiently culpable state of mind. *Wilson v. Seiter*, 501

U.S. 294, 298 (1991); *see also McNeil v. Lane,* 16 F.3d 123, 124 (7th Cir. 1994). The subjective component is satisfied if the plaintiff shows that the prison official acted or failed to act despite the official's knowledge of a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 842 (1994).

The conditions of Plaintiff's confinement in the C-wing observation cell (24-hour illumination, no mattress or plumbing, foul odors) were certainly unpleasant. However, nothing in the complaint indicates that these conditions exposed him to any serious risk of harm to his health or deprived him of the basic necessities of life. He does not claim that he was denied access to restroom facilities or drinking water. Although the cell smelled of urine and feces, he does not allege that he was exposed to any actual contact with human waste or suffered any physical symptoms other than temporary discomfort. Therefore, these conditions were not sufficiently serious to meet the objective component of an Eighth Amendment claim. *Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988); *Caldwell v. Miller*, 790 F.2d 589, 600-01 (7th Cir. 1986) (mere discomfort and inconvenience do not implicate the constitution).

Because the objective conditions do not rise to the level of an Eighth Amendment violation, no inquiry is necessary into the subjective component of such a claim. Likewise, under the *Marion* analysis, the conditions of Plaintiff's confinement in the observation cell do not indicate that he was subjected to any atypical or significant hardship. He thus has failed to state a claim for deprivation of a liberty interest without due process.

Plaintiff also argues that under prison regulations, he should have been given credit for the earlier period he spent in segregation (May to August 2011), when calculating the release date for his remaining six-month segregation term which began with the August 2011 IDR. Whether or not this is correct, the failure of prison officials to follow state rules or administrative

regulations does not give rise to a constitutional claim. *Pasiewicz v. Lake Cnty. Forest Preserve Dist.*, 270 F.3d 520, 526 (7th Cir. 2001); *Archie v. City of Racine,* 847 F.2d 1211, 1217 (7th Cir. 1988) (en banc), *cert. denied,* 489 U.S. 1065 (1989) (a federal court does not enforce state law or regulations).

Accordingly, Plaintiff's claims against Defendants Mifflin and Rednour for deprivation of a liberty interest without due process/excessive segregation (Count 1) and against Defendants Mifflin, Rednour, Heinne, Witthoff, Carthwright, Durham, and Hasemeyer for unconstitutional conditions of confinement (Count 2) shall be dismissed with prejudice.

Even though Plaintiff has no constitutional claims for his confinement in segregation per se, he appears to argue that his placement or retention in the C-wing observation cell was the result of retaliation (Doc. 1, p. 10). A claim for retaliation may be cognizable under § 1983. *See Bridges v. Gilbert*, 557 F.3d 541, 552 (7th Cir. 2009). Plaintiff's complaint, however, falls short of making a connection between some protected activity on his part and the resulting, allegedly retaliatory, cell placement. Plaintiff's retaliation claim (Count 3) shall thus be dismissed without prejudice.

However, Plaintiff shall be allowed the opportunity to submit an amended complaint, within 35 days of the entry of this order, to present any facts which may exist that would sustain his retaliation claim. If the amended complaint still fails to state a claim, or if Plaintiff does not submit an amended complaint, the dismissal of Count 3 shall become a dismissal with prejudice. The amended complaint shall be subject to review pursuant to § 1915A.

Finally, Plaintiff fails to state a claim against Defendant Harrington or Defendant Benton (of the Administrative Review Board) for their handling of his grievances (Count 4). Prison grievance procedures are not constitutionally mandated and thus do not implicate the Due

Process Clause per se.  As such, the alleged mishandling of grievances "by persons who otherwise did not cause or participate in the underlying conduct states no claim."  *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011).  *See also Grieveson v. Anderson*, 538 F.3d 763, 772 n.3 (7th Cir. 2008); *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007); *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996).  This count shall also be dismissed with prejudice.

## Disposition

Plaintiff's complaint (Doc. 1) is **DISMISSED** for failure to state a claim upon which relief may be granted.  **COUNTS 1, 2, and 4** of the complaint are **DISMISSED with prejudice. COUNT 3 (Retaliation)** is **DISMISSED** without prejudice, subject to the 35 day leave to file an amended complaint.

Should Plaintiff wish to proceed on his retaliation claim in **COUNT 3**, he shall file his First Amended Complaint, stating any facts which may exist to support a retaliation claim and naming the individual Defendants directly responsible for the alleged deprivations in Count 3, within 35 days of the entry of this order (on or before December 24, 2012).  The amended complaint shall not include any of the claims dismissed in Counts 1, 2, and 4 above.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void.  *See Flannery v. Recording Indus. Ass'n of Am.,* 354 F.3d 632, 638 n.1 (7th Cir. 2004).  The Court will not accept piecemeal amendments to the original complaint.  Thus, the First Amended Complaint must stand on its own, without reference to any prior pleading.  Should the First Amended Complaint not conform to the requirements herein, it shall be stricken.  Plaintiff must also re-file any exhibits he wishes the Court to consider along with the First Amended Complaint.  Failure to file an amended complaint shall result in the dismissal of Count 3 becoming a dismissal with prejudice.  Furthermore, because Plaintiff has failed to

state any other constitutional claim, if he fails to file an amended complaint or if the amended complaint does not state a claim upon which relief may be granted, the action shall be dismissed and shall count as one of his three allotted "strikes" under the provisions of 28 U.S.C. § 1915(g).

In order to assist Plaintiff in preparing his amended complaint, the Clerk is **DIRECTED** to mail Plaintiff a blank civil rights complaint form.

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Further, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:** November 19, 2012

s/ *G. Patrick Murphy*<br>G. PATRICK MURPHY<br>United States District Judge